# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 8, 2013

## STATE OF TENNESSEE v. MICHAEL ALVIN HARDING

**Appeal from the Circuit Court for Maury County**
**No. 21168     Robert T. Jones, Judge**

---

**No. M2012-02262-CCA-R3-CD - Filed November 14, 2013**

---

The defendant, Michael Alvin Harding, appeals his Maury County Circuit Court jury convictions of the sale of .5 grams or more of cocaine and the sale of .5 grams or more of cocaine within 1,000 feet of a school, claiming that the evidence was insufficient to support his convictions, that the trial court erred in its instructions to the jury, and that the 15-year sentence was excessive. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Debbie L. Zimmerle, Lewisburg, Tennessee, for the appellant, Michael Alvin Harding.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Mike Bottoms, District Attorney General, and Brent A. Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's convictions relate to events on May 23 and 25, 2011, in Columbia. At trial, Columbia Police Department ("CPD") Narcotics and Vice Unit Officer Jason Dark testified that he utilized the services of paid informant Steve Hamvy on May 23 and 25, 2011, to perform two controlled purchases of crack cocaine from the defendant. On May 23, 2011, Mr. Hamvy contacted Officer Dark with information that Mr. Hamvy could purchase crack cocaine from an individual known as "Al." Using the address provided by Mr. Hamvy for the potential location of the drug sale, Officer Dark learned that the address belonged to the defendant. Officer Dark then obtained a photograph of the defendant, and

Mr. Hamvy confirmed that the defendant was the man known to him as "Al."

At that point, Officer Dark provided Mr. Hamvy "with $100 of photocopied money" to purchase crack cocaine. Mr. Hamvy was searched, provided with a vehicle to drive to the location of the transaction, and fitted with a hidden video camera and audio recording equipment to record the transaction. Mr. Hamvy traveled first to the defendant's residence, then he went with the defendant to another location to get the crack cocaine. Officer Dark followed. Following the transaction, Mr. Hamvy and Officer Dark returned to the police station, where Officer Dark took the recorder and the purchased drugs from Mr. Hamvy. Officer Dark said that the amount of cocaine that Mr. Hamvy received during the May 23, 2011 transaction was typical of the amount generally available for $100. Officer Dark acknowledged that the actual hand-to-hand transaction was not recorded by the video camera.

Officer Dark testified that, using a computer program available from the Columbia City Planning Department, he determined that the distance between the defendant's residence and the College Hill School was 737 feet. He said that he verified this measurement using a "wheel" measuring device.

Officer Dark testified that he and Mr. Hamvy followed the same procedure to execute a controlled buy from the defendant on May 25, 2011. On that day, Mr. Hamvy drove to the defendant's residence, where he waited while the defendant "walked up the street[] and then returned" with the crack cocaine. After that transaction, Mr. Hamvy and Officer Dark returned to the police station, where Officer Dark again collected the contraband and recording equipment. The amount of substance obtained by Mr. Hamvy on May 25, 2011, was slightly more than that obtained during the May 23 transaction. Officer Dark testified that he gave the contraband from both transactions to the police department evidence clerk.

Officer Dark testified that he listened to telephone calls made by the defendant from the jail. In one conversation, the defendant assures his listener that he will be out of jail in a month and that he was only guilty of facilitation because he "had to call someone to get it." The defendant said, "'I'm not a dope dealer. I'm a smoker.'"

Ricky Broadway, an employee of the Maury County Board of Education, testified that the College Hill School, also known as Horace Porter, is a public school operating as "an alternative school, a discipline school" for children in all grades.

CPD Lieutenant Jeremy Thomas Alsup testified that he obtained a "mid-range size" evidence envelope from the CPD evidence clerk and took it to the Tennessee Bureau

of Investigation ("TBI") laboratory on May 27, 2011.

TBI Special Agent and Forensic Scientist Denotria Patterson testified that she examined the contents of the envelope obtained from Lieutenant Alsup. The envelope contained two separate packages of a rock-like substance. Testing established that one package contained .55 grams of cocaine base. The second contained .71 grams of cocaine base.

Steve Hamvy testified that he agreed to act as a confidential informant in exchange for money. On May 23, 2011, he went to Officer Dark and suggested that he could buy crack cocaine from the defendant, whom he had known for less than six months. After Officer Dark agreed, Mr. Hamvy telephoned the defendant and arranged to purchase $100 worth of crack cocaine. Mr. Hamvy said that while at the police station, he was searched, fitted with recording equipment, and provided with five $20 bills with which to purchase drugs from the defendant. He then traveled to the defendant's residence in a car provided by the CPD.

At the defendant's residence, the defendant telephoned another person to get the cocaine. Mr. Hamvy said that the defendant told him that the drugs would be there in 10 minutes. While they waited, the defendant performed yard work at the house next door. After a while, the defendant accepted another telephone call and then told Mr. Hamvy that they would have to go to another location to obtain the cocaine. They left and went to another location, where Mr. Hamvy obtained the drugs. Mr. Hamvy returned the defendant to his residence and then returned to the police department, where he gave the cocaine to Officer Dark.

Two days later, Mr. Hamvy again contacted Officer Dark and said that he could "make another buy to make more money." Officer Dark agreed, and Mr. Hamvy came to the police station, where the same protocols were followed before he left to go to the defendant's residence. When he arrived at the defendant's residence, the defendant "was across the street on the porch" of another house smoking marijuana with "the young lady that he was talking to." He and the defendant went to the defendant's residence, where they listened to music until a car pulled up, and the defendant went to meet it. The defendant then walked up the street while Mr. Hamvy waited in the garage of the defendant's residence. Mr. Hamvy had given the defendant money, and the defendant returned with crack cocaine and gave it to Mr. Hamvy. After he received the cocaine from the defendant, Mr. Hamvy returned to the police department and gave the cocaine to Officer Dark.

During cross-examination, Mr. Hamvy admitted that he was using cocaine during the time frame of the buys but insisted that he did not use it on those days.

Following this testimony, the State rested. After a *Momon* colloquy, *see State v. Momon*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected not to testify and chose not to present any proof. The jury convicted the defendant of the lesser included offense of the sale of .5 grams or more of cocaine in count one and as charged of the sale of .5 grams or more of cocaine in a school zone in count two. The trial court imposed concurrent, Range I sentences of 10 years and 15 years, respectively. The defendant's 15-year sentence for selling cocaine in a school zone must be served at 100 percent by operation of law.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant challenges the sufficiency of the convicting evidence, the propriety of certain of the trial court's instructions to the jury, and the imposition of a 100-percent service requirement for his 15-year sentence. We consider each claim in turn.

*I. Sufficiency*

The defendant asserts that the evidence is insufficient to support his convictions, claiming that the evidence, at most, established that he facilitated Mr. Hamvy's purchases of cocaine from the actual seller of the drug. The State contends that the evidence was sufficient to support the defendant's convictions.

We review the defendant's challenge to the sufficiency of the evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"It is an offense for a defendant to knowingly [s]ell a controlled substance." T.C.A. § 39-17-417(a)(3) (2006). A substance containing cocaine is a Schedule II controlled substance. *Id.* § 39-17-408(b)(4). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." *Id.* § 39-12-101(a)(2). Where the State establishes that the violation of subsection 417(a)(3) "occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school [or] middle school," the defendant is subjected to a higher offense classification, a greater fine, and a minimum mandatory sentence. *See id.* § 39-17-432.

The defendant does not challenge the identity or weight of the substance involved and does not contest the jury's finding that the May 25, 2011 offense occurred within a drug-free school zone. Instead he argues that because he merely acted as an intermediary between Mr. Hamvy and the actual seller of the cocaine, he was guilty only of the lesser included offense of facilitating the sale of cocaine. The evidence in the light most favorable to the State, however, established that although the defendant himself procured the cocaine from another source, he sold that cocaine to Mr. Hamvy. During both transactions, Mr. Hamvy gave $100 to the defendant in exchange for crack cocaine. Agent Patterson testified that the May 23 amount was .55 grams of crack cocaine and that the May 25 amount was .71 grams of crack cocaine. Additionally, Officer Dark testified that the defendant's residence, which was the location of the second transaction, was 737 feet from the College Hill school. This evidence is sufficient to support the defendant's convictions.

## II. Jury Instructions

The defendant next contends that the instructions provided by the trial court to the jury just prior to the jury's beginning deliberations placed undue pressure on the jury to reach a verdict quickly. The State asserts that the defendant has waived our consideration of this issue by failing to lodge a contemporaneous objection and by failing to support his argument with citation to relevant authorities.

The record establishes that at the completion of the proof and the parties' summations at approximately 4:00 p.m., the trial judge told the jury that he had a prior commitment that would necessitate his leaving promptly at 5:30 p.m. The court informed the jury that as a result, unless it reached its verdict by "5:14 or so," the court would reconvene for deliberations on the following morning. The trial court emphasized to the jury that it did not "want to suggest you to rush." The jury retired to deliberate at 4:37 p.m. Just after sending the jury to deliberate, the trial court asked the parties if they had any objections to the jury instructions, and defense counsel replied, "No, your Honor." The jury reached its

verdict at 5:18 p.m., and the defendant claimed in his motion for new trial that the trial court placed undue pressure on the jury to reach a verdict quickly.

We agree with the State that the defendant's failure to lodge a contemporaneous objection to the trial court's instruction results in a waiver of plenary review of this issue. *See* Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); *State v. Rhoden*, 739 S.W.2d 6, 11-12, 18 (Tenn. Crim. App. 1987). Similarly, he has waived our consideration of the issue by failing to support his argument with citation to appropriate authorities. *See* Tenn. R. App. P. 27(a)(7) (stating that the appellant's brief must contain an argument, "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities and appropriate references to the record . . . relied on; and . . . for each issue, a concise statement of the applicable standard of review"); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Moreover, the record does not support the defendant's claim. Instead, the record clearly establishes that the trial court's instructions were more in the nature of administering its own schedule than encouraging the jury to reach a speedy verdict. Indeed, the court informed jurors that they could return the following morning and deliberate at their leisure in a room reserved solely for that purpose.

## III. Sentencing

Finally, the defendant asserts that the trial court's order that he serve 100 percent of his 15-year sentence for selling cocaine in a school zone is excessive because the proof established that school was not in session at the time of the sale. As the State correctly points out, however, service of 100 percent of the statutory minimum mandatory sentence is required by statute for a conviction of selling cocaine in a school zone. Code section 39-17-432 provides, in pertinent part:

> (c) Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum

sentence.

> (d) Notwithstanding the sentence imposed by the court, the provisions of title 40, chapter 35, part 5, relative to release eligibility status and parole, shall not apply to or authorize the release of a defendant sentenced for a violation of subsection (b) prior to service of the entire minimum sentence for the defendant's appropriate range of sentence.

T.C.A. § 39-17-432(c)-(d). The defendant's conviction of the sale of more than .5 grams of cocaine within 1,000 feet of a school is a Class A felony, *see id.* § 39-17-432(b), and the minimum Range I sentence for a Class A felony offense is 15 years, *see id.* § 40-35-112(a)(1). Thus, the defendant is statutorily required to serve 100 percent of the 15-year sentence imposed by the trial court. That the school may not have been in session does not alter that fact. Nothing in Code section 39-17-432 suggests that its provisions apply only when a school is in session or children are present. "The language of [Code section 39-17-432] unambiguously imposes enhanced criminal penalties for drug offenses occurring inside the school zone regardless of the timing of the drug offense." *State v. Smith*, 48 S.W.3d 159, 169 (Tenn. Crim. App. 2000).

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE